**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LEGION INDEMNITY COMPANY, IN LIQUIDATION, | ) | |
| | ) | |
| | ) | |
| Petitioner | ) | Case No: 18-cv-06595, reassigned to |
| | ) | 18-cv-05642 |
| | ) | |
| v. | ) | Honorable Manish S. Shah |
| | ) | |
| CATALINA HOLDINGS (BERMUDA), LIMITED | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

**LIQUIDATOR'S MEMORANDUM IN SUPPORT OF HER MOTION TO REMAND**

# TABLE OF CONTENTS

                                                                                      Page

INTRODUCTION ............................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND........................................... 3

ARGUMENT................................................................................................... 6

    I.    This Court Should Grant the Motion to Remand................................. 6

        A.    The Removal Action Should Be Remanded Because the Convention Act Is Reverse-Preempted by the Illinois Liquidation Statute Under the McCarran-Ferguson Act ................................................ 6

        B.    This Court Should Abstain From Hearing the Removal Action............... 11

        C.    The Removal Action Should Be Remanded Because of the Anti-Suit Injunctions of the Liquidation Order ....................................... 15

        D.    This Court Should Award Petitioner Her Attorneys' Fees, Costs and Expenses Incurred as a Result of the Improper Removal Action ............. 17

CONCLUSION.................................................................................................. 18

- i -

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Cast Iron Pipe Co. v. Statesman Ins. Co.*, 343 F. Supp. 860 (D. Minn. 1972) .................................................................................................................17

*Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037 (7th Cir. 1998) ..................7

*Blackhawk Heating & Plumbing Co. v. Geeslin*, 530 F.2d 154 (7th Cir. 1976)............13

*Boozell v. U.S.*, 979 F.Supp. 670 (N.D. Ill. 1997) ........................................................8

*Brooks v. Giuliani*, 84 F.3d 1454 (2d Cir. 1996) .........................................................17

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).....................................................2, 11, 12

*Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286 (11th Cir. 2004) ...................10

*Dowling v. United States Dep't of Health & Human Servs.*, 2018 WL 3232792 (N.D. Ill. July 2, 2018) ..........................................................................................14, 15

*Foresight Energy, LLC v. Certain London Market Ins. Cos*, 311 F.Supp.3d 1085 (E.D. Mo. 2018) .......................................................................................................9

*Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407 (7th Cir.2000)..................................18

*Gen. Railway Signal Co.*, 921 F.2d at 708................................................................14

*Glazer's Distributors of Illinois, Inc. v. NWS-Illinois, LLC*, 376 Ill. App. 3d 411 (1st Dist. 2007).......................................................................................................10

*Hartford Casualty Ins. Co. v. Borg-Warner Corp.*, 913 F.3d 419 (7th Cir. 1990)............... *passim*

*Husko v. Geary Elec., Inc.*, 316 F. Supp. 2d 664 (N.D. Ill. 2004) ..............................17

*In re Amwest Sur. Ins. Co.*, 2004 WL 628217 (D. Neb. 2004) (unpublished)................7

*In re Amwest Surety Ins. Co.*, 245 F. Supp. 2d 1038 (D. Neb. 2002) .........................9

*In re Rehab. of Segregated Account of Ambac Assur. Corp.*, 2013 WL 9838167 (W.D. Wis. July 8, 2013) .......................................................................................7, 9

*Independent Petrochemical Corp. v. Aetna Cas. and Sur. Co.*, 672 F. Supp. 1 (D.D.C. 1986) ..........................................................................................................17

*Janak v. Allstate Ins. Co.*, 319 F. Supp. 215 (W.D. Wis. 1970) ..................................17

*Kessner v. One Beacon Ins. Co.,* 2009 WL 1408973 (D. Neb. May 18, 2009)
(unpublished) ..................................................................................................7

*Kitces v. Wood,* 917 F. Supp. 338 (D.N.J. 1996) ..........................................................16

*McRaith v. Am. Re-Ins. Co.,* 2010 WL 624857 (N.D. Ill. Feb. 17, 2010)
(unpublished) ...............................................................................................7, 9

*Mountain Funding, Inc. v. Frontier Ins. Co.,* 329 F. Supp. 2d 994 (N.D. Ill. 2004) ....................13

*Ophthalmic Mut. Ins. Co. v. Musser,* 143 F.3d 1062 (7th Cir. 1998) ....................................6

*Prop. & Cas. Ins. Ltd. v. Cent. Nat'l Ins. Co. of Omaha,* 936 F.2d 319 (7th Cir.
1991) ...................................................................................................11, 12

*Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706 (1996) ...............................................15

*Securities and Exchange Commission v. National Securities, Inc.,* 393 U.S. 453
(1969) .......................................................................................................7

*Shapo v. Engle,* 1999 WL 446853 (N.D. Ill. June 11, 1999) ........................................8, 14

*Sierra v. Cruise Ships Catering & Servs. Int'l, N.V.,* 631 F. App'x 714 (11th Cir.
2015) ......................................................................................................10

*Stephens v. American International Ins. Co.,* 66 F.3d 41 (2nd Cir. 1995) ..............................9

*Transit Casualty Co. v. Certain Underwriters at Lloyd's of London,* 119 F.3d 619
(8th Cir. 1997)...............................................................................................7

*Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health
Ins. Guaranty Ass'n,* 455 U.S. 691 (1982)....................................................................17

*United Phosphorous, Ltd. v. Angus Chem. Co.,* 322 F.3d 942 (7th Cir. 2003) (*en
banc*) ......................................................................................................10

*United States Dep't. of Treasury v. Fabe,* 508 U.S. 491 (1993)...................................7, 13

*Western Insurance Co. v. A&H Insurance, Inc.,* 784 F.3d 725 (10th Cir. 2015) ..........................9

*Williams v. Murdoch,* 330 F.2d 745 (3d Cir. 1977).......................................................17

**Statutes and Constitutional Provisions**

215 ILCS 5/187.............................................................................................1

215 ILCS 5/188..........................................................................................3, 8

215 ILCS 5/189........................................................................................14, 15

215 ILCS 5/191 ...................................................................................................4

215 ILCS 5/202 ...................................................................................................4

215 ILCS 5/205 .................................................................................................15

42 Pa.C.S. § 7314 .............................................................................................10

9 U.S.C. §§ 201-208 .......................................................................................6, 7

15 U.S.C. § 1011 ........................................................................................ *passim*

15 U.S.C. § 1012(b) .............................................................................................6

28 U.S.C. § 1441 ........................................................................................6, 7, 9

28 U.S.C. § 1447(c) ...........................................................................................18

28 U.S.C. § 1738 ........................................................................................16, 17

Convention Act .........................................................................................9, 10, 11

FAA Article 2 .....................................................................................................11

Pennsylvania Uniform Arbitration Act .............................................................10

Petitioner, Jennifer Hammer, Liquidator of Insurance of the State of Illinois ("Petitioner" or "Liquidator") in her capacity as Liquidator of Legion Indemnity Company, in Liquidation ("Legion Indemnity"), incorrectly named as Legion Indemnity Company, In Liquidation, by and through her attorneys, Thompson Coburn, LLP, and for her Memorandum in Support of her Motion to Remand ("Motion"), states as follows:

## INTRODUCTION

The McCarron-Ferguson Act, 15 U.S.C. § 1011 *et seq.* provides the States with the primary power to regulate the insurance industry. Pursuant to that authority, Illinois has devised a detailed set of procedures governing the rehabilitation and liquidation of insolvent insurers, such as Legion Indemnity. *See* Article XIII of the Code, 215 ILCS 5/187, *et seq.* (the "Illinois Liquidation Statute"). The Illinois Liquidation Statute provides an orderly process for determining the order in which claimants should be paid money from the estate of Legion Indemnity ("Estate"), and requires that one of two Illinois circuit courts (Sangamon and Cook County) are the **exclusive** forums for hearing cases involving that process. Since Legion Indemnity went into liquidation in April, 2003, the Circuit Court of Cook County, Illinois (the "Liquidation Court") has been tasked with handling all claims seeking, or involving, payments from the Estate. Consistent with the McCarron-Ferguson Act and the Illinois Liquidation Statute, the Liquidation Court also ordered that all other courts, including this Court, refrain from hearing any such cases.

Here, Respondent Catalina Holdings (Bermuda) Limited, successor in interest to Alea Group Holdings ("Alea") and Rhine Ruecksversicherung AG ("Rhine Re") ("Respondent" or "Catalina") agrees with Petitioner that any enforcement of the Final Award (hereinafter defined) should take place in the Liquidation Court. Yet, Catalina filed a Notice of Removal with this Court seeking to remove the Liquidator's Motion to Vacate or Modify the Final Award ("Motion to

Vacate") that was properly filed in the Liquidation Court, but no other part of the liquidation proceeding (the "Removal Action"). Catalina asserts that it is entitled to remove the Motion to Vacate on the basis of federal question jurisdiction pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517 (1970) (the "Convention Act"). Under well-settled law and pursuant to an order by the Liquidation Court, the Removal Action should be remanded to the Liquidation Court because this Court lacks subject-matter jurisdiction over the Removal Action, or alternatively, this Court should abstain from exercising jurisdiction in deference to the Liquidation Court. The Removal Action is particularly unreasonable in light of the multitude of reasons in support of remand, and Catalina's own acknowledgment that the Liquidation Court is the proper forum to enforce the Final Award. Accordingly, this Court should award the Liquidator her costs and expenses, including attorneys' fees incurred as a result of the Removal Action.

This Court should grant the Liquidator's Motion and remand the Removal Action for three reasons: First, this Court lacks subject matter jurisdiction because the Convention Act does not apply to the Removal Action, and it is reverse-preempted by the Illinois Liquidation Statute pursuant to the McCarran-Ferguson Act, 15 U.S.C. §1011 *et seq*. Second, even if the Convention Act applied and was not reverse-preempted, this Court should abstain from exercising its jurisdiction over the Removal Action pursuant to the abstention doctrine established in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Alternatively, this Court should stay the Removal Action until completion of the liquidation proceedings pursuant to the *Burford* abstention doctrine. Finally, the anti-suit injunctions in the Liquidation Order (hereinafter defined) requires that this Court remand the Removal Action in deference to the ongoing proceedings in the Liquidation Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Legion Indemnity and Alea f/k/a Rhein Re entered into the following quota share treaties: (a) Contractors Wrap-Up/Projects and Discontinued Completed Operations Casualty Quota Share Reinsurance Agreement, effective January 1, 2000 through January 1, 2001; (b) Contractors Wrap-Up/Projects and Discontinued Completed Operations Casualty Quota Share Reinsurance Agreement, effective January 1, 2001 through January 1, 2002; (c) General Contractors and Sub-Contractors Casualty Quota Share Reinsurance Agreement, effective January 1, 2001 through January 1, 2002; (d) Contractors Excess Wrap-Up Quota Share Reinsurance Agreement, effective January 1, 2000 through January 1, 2001; and (e) the Mobile Crane Rental Program Excess of Loss Reinsurance Agreement, effective March 1, 2000 through February 28, 2001 (collectively, the "Subject Treaties").[1] True and correct copies of the Subject Treaties are attached as Exhibit A to Petitioner's Motion to Vacate, which is attached as Exhibit B to the Removal Action. Catalina assumed responsibility for the Subject Treaties when it acquired Alea. Among other things, the Subject Treaties require that Catalina pay Legion Indemnity its share of liabilities, including paid losses, loss expense paid, extra contractual obligations, excess limits liability, and over-paid premium ceded to it under the Treaties ("Ceded Liabilities").

On April 9, 2003, the Circuit Court of Cook County, Illinois (the "Liquidation Court") entered an Order of Liquidation with a finding of insolvency against Legion Indemnity Company pursuant to 215 ILCS 5/188 (the "Liquidation Order"). A true and correct copy of the Liquidation Order is attached hereto as Exhibit A. The Liquidation Order affirmed the Liquidator as the

---

[1] Legion Indemnity and Alea f/k/a Rhein Re also entered into the Casualty Quota Share Reinsurance Agreement (A.C.T. Preferred Residential, U.S. Risk Underwriters). However, Petitioner did not demand arbitration against Catalina pursuant to this Treaty. Nonetheless, throughout the process of the arbitration, Catalina did claim amounts owed, and the Panel did base its Final Award, on this Treaty.

statutory liquidator and vested the Liquidator with title to all property, assets, contracts, and rights of action of Legion Indemnity, including all rights, title and interest in all funds recoverable under any treaties and agreements of reinsurance previously entered into by or on behalf of Legion Indemnity. Ex. A; see also 215 ILCS 5/191. Additionally, the Liquidation Order authorized the Liquidator to deal with such property, assets, contracts and rights of action for the benefit of Legion Indemnity's policyholders and creditors. Finally, the Liquidation Order provides anti-suit injunctions restraining Catalina from bringing this action in this Court. See Ex. A, ¶J (iv) and (vii).

Pursuant to Section 202 of the Code, the Liquidator appointed the Office of the Special Deputy Receiver (the "OSD") to assist the Liquidator in the performance of her duties under the Code. 215 ILCS 5/202. Prior to liquidation, Legion Indemnity billed Catalina for certain Ceded Liabilities, which Catalina has refused to pay. Since liquidation, the OSD has received a number of claims filed against the Estate that, if approved by the Liquidation Court, would cede to Catalina and other reinsurers under the Subject Treaties. Since Catalina did not interpose any defenses before the Liquidation Court to these claims, the Liquidation Court approved the OSD's recommended claim allowances. The OSD then billed Catalina and other reinsurers pursuant to the terms of the Subject Treaties for their proportional share of the Ceded Liabilities resulting from these approved claims. However, Catalina also refused to pay their proportional share of these Ceded Liabilities pursuant to terms of the Subject Treaties.

The Subject Treaties require that any dispute between Petitioner and Catalina relating to the Subject Treaties is submitted to binding arbitration. Removal Action, Ex. B, Ex. A, Arbitration Clause. The Arbitration clause also provides, in pertinent part:

> Arbitration hereunder will take place in Philadelphia, Pennsylvania, unless both parties agree otherwise. Except as hereinabove provided, the arbitration will be in accordance with the rules and procedures established by the Uniform Arbitration Act as enacted in Pennsylvania.

On December 21, 2016, Petitioner demanded arbitration pursuant to the Subject Treaties to recover Catalina's contractual share of the Ceded Liabilities. Catalina and Petitioner agreed to hold the arbitration in Chicago, Illinois and agreed to a three member arbitration panel ("Panel"). The parties never agreed that the arbitration would be governed by the FAA, including the Convention Act, or any law other than the Pennsylvania Uniform Arbitration Act.

From June 12 – 14, 2018, a hearing was held in Chicago, Illinois. After the hearing, the Panel issued the Initial Final Award attached as Exhibit A to the Petition (hereinafter defined). *See* Dkt. No. 1, Ex. A. Without any basis in the Subject Treaties or applicable law, the Panel awarded Catalina its attorneys' fees incurred during the arbitration. *See id.* At the request of the Panel, Catalina submitted its petition in support of the amount of attorneys' fees it supposedly incurred ("Fee Petition"). In response, Petitioner moved to vacate the Initial Final Award. Thereafter, the Panel issued the Final Award attached as Exhibit B to the Petition, awarding Catalina the amount requested in its Fee Petition.

On August 17, 2018, Catalina improperly petitioned this Court to confirm the Final Award and enter an order awarding Catalina money from the Estate (the "Petition"). Catalina erroneously asserts that this Court has subject-matter jurisdiction pursuant to the Convention Act to decide the Petition. For this reason, and others, the Liquidator moved to dismiss, or alternatively, stay the Petition, and that motion is currently pending before this Court. On September 24, 2018, Petitioner timely filed her Motion to Vacate in the Liquidation Court because the Panel exceeded its power in awarding Catalina its attorneys' fees. *See* Removal Action, Ex. B. Days later, Catalina filed the instant Removal Action, and moved to reassign the Removal Action with Case No. 18-CV-05642, which stems from the Petition. Finally, on October 10, 2018, this Court granted Catalina's

Motion to reassign. Dkt. No. 24. For the reasons set forth below, the Liquidation Court is the proper forum for resolving the Removal Action, and enforcing the Final Award, if not vacated.

## ARGUMENT

**I.  This Court Should Grant the Motion to Remand**

    **A. The Removal Action Should Be Remanded Because the Convention Act Is Reverse-Preempted by the Illinois Liquidation Statute Under the McCarran-Ferguson Act**

Catalina contends that it is entitled to remove the Motion to Vacate pursuant to 28 U.S.C. §1441 (the "Removal Statute") because this Court has subject matter jurisdiction over the Motion to Vacate based on the Convention Act, 9 U.S.C. § 203 (2012). Removal Action, ¶ 10. The Convention Act is not applicable to the Removal Action, and therefore no federal question jurisdiction exists, because the Illinois Liquidation Statute reverse preempts the Convention Act under the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.* Additionally, the Removal Statute is likewise reverse preempted by the Illinois Liquidation Statute. Accordingly, this Court should remand the Removal Action.

The McCarran-Ferguson Act gives the states the power to regulate the business of insurance. *Hartford Casualty Ins. Co. v. Borg-Warner Corp.,* 913 F.3d 419, 420 (7th Cir. 1990). It provides in pertinent part that, "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, ... unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). Moreover, the Seventh Circuit has opined that, "[i]n accordance with the policy directives Congress elucidated in the McCarran-Ferguson Act, if there is a doubt regarding whether Congress intended to preempt a particular state insurance law, there is a presumption against preemption." *Ophthalmic Mut. Ins. Co. v. Musser,* 143 F.3d 1062, 1067 (7th Cir. 1998).

- 6 -

The Seventh Circuit has adopted the three part inquiry set forth in *United States Dep't. of Treasury v. Fabe*, 508 U.S. 491 (1993) to determine whether a federal statute is reverse-preempted by state law related to insurance under the McCarran-Ferguson Act. A court should (1) determine whether the federal statute to be applied relates to the business of insurance; (2) determine whether the relevant state statute was enacted for the purpose of regulating the business of insurance; and (3) determine whether the application of the federal statute would "invalidate, impair or supersede" the state law. *See Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037, 1040-41 (7th Cir. 1998). Here, each of these factors weigh in favor of reverse-preemption.

First, the Convention Act and Removal Statute undeniably do not relate to the business of insurance.[2] *See generally*, Convention Act, 9 U.S.C. §§ 201-208; *Transit Casualty Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 622 (8th Cir. 1997) ("neither the FAA nor the Convention [Act] specifically relate to the business of insurance."); *In re Rehab. of Segregated Account of Ambac Assur. Corp.*, 2013 WL 9838167, at *1 (W.D. Wis. July 8, 2013) (unreported) (federal jurisdictional statutes such as 28 U.S.C. § 1441 are not enacted specifically to govern or relate to the business of insurance). Catalina does not, and cannot, contest this.[3] Thus, the first prong of the test is met.

Second, the Illinois Liquidation Statute, which governs Legion Indemnity's liquidation proceeding, was undoubtedly enacted for the purpose of regulating the business of insurance. *Securities and Exchange Commission v. National Securities, Inc.*, 393 U.S. 453, 460, (1969)

---

[2] Even assuming that Catalina amends the Removal Action to assert diversity jurisdiction, the diversity jurisdiction statute also does not relate to the business of insurance. *See, e.g., McRaith v. Am. Re-Ins. Co.*, 2010 WL 624857, at *2 (N.D. Ill. Feb. 17, 2010) (unpublished)*; Kessner v. One Beacon Ins. Co.*, 2009 WL 1408973 at p. 3 (D. Neb. May 18, 2009) (unpublished); *In re Amwest Sur. Ins. Co.*, 2004 WL 628217 at p. 2 (D. Neb. 2004) (unpublished).

[3] *See* Catalina's Response in Opposition to the Director's Motion to Dismiss or Stay the Petition. Dkt. No. 25, p. 8.

(noting that "[s]tatutes aimed at protecting or regulating [the relationship between the insurance company and the policyholder], directly or indirectly, are laws regulating the 'business of insurance.'"); *Boozell v. U.S.,* 979 F.Supp. 670, 678 (N.D. Ill. 1997) (holding that the scheme established by the Illinois Insurance Code for prioritizing claims against insolvent insurers regulates the "business of insurance."). Since the Illinois Liquidation Statute undoubtedly involves the "business of insurance," the second prong is met.

Third, removing the Motion to Vacate pursuant to the Removal Statute and Convention Act would "invalidate, impair or supersede" the Illinois Liquidation Statute. The Illinois Liquidation Statute designates the circuit court of Sangamon or Cook County, or the circuit court where a troubled insurer last had its principal office, as the exclusive forums for the liquidation of that insurer, and thus any claims against that insurer. *See* 215 ILCS 5/188, 188.1. Permitting the Removal Action to proceed in this Court would impair Illinois' long-standing policy under the Illinois Liquidation Statute requiring that the Liquidation Court handle claims against insolvent insurers and that the Liquidator, not this Court, marshal any remaining funds from the Estate to policyholders and creditors. *See Hartford Cas. Ins. Co.,* 913 F.2d at 426 (noting, "[w]ith the McCarran–Ferguson Act stating congressional policy that insurance regulation is up to the states, it is difficult to understand how [plaintiff] can maintain that a federal court should entertain a lawsuit where it will have to decide the amount and existence of liability that an insolvent Illinois insurer owes to plaintiff."). *See also, Shapo v. Engle*, 1999 WL 446853, at *10 (N.D. Ill. June 11, 1999) ("If we were to order the Insurance Companies to advance the Liquidator Defendants their costs and expenses in this matter, we would not only frustrate Illinois' policy of handling claims against an insolvent insurance company in a fair and orderly fashion, but we would also permit the Liquidator Defendants to "jump ahead" of seemingly senior interests."). For this Court to decide

the Motion to Vacate, it would undoubtedly have to decide the existence of liability and amount that Petitioner may owe Catalina; a task reserved exclusively for the Liquidation Court pursuant to the Illinois Liquidation Statute. Accordingly, the Convention Act and Removal Statute are reverse-preempted by the Illinois Liquidation Statute pursuant to the McCarran-Ferguson Act. *See id.; Stephens v. American International Ins. Co.,* 66 F.3d 41 (2nd Cir. 1995); *Foresight Energy, LLC v. Certain London Market Ins. Cos,* 311 F.Supp.3d 1085 (E.D. Mo. 2018); *see also Western Insurance Co. v. A&H Insurance, Inc.,* 784 F.3d 725 (10th Cir. 2015) (dismissing appeal of district court ruling that the federal removal statute was reverse-preempted under McCarran-Ferguson); *In re Rehab. of Segregated Account of Ambac Assur. Corp.,* 2013 WL 9838167, at \*1 (W.D. Wis. July 8, 2013) (holding that the McCarran–Ferguson Act reverse preempts federal jurisdictional statutes such as 28 U.S.C. § 1441 that were not enacted specifically to govern or relate to the business of insurance); *In re Amwest Surety Ins. Co.,* 245 F. Supp. 2d 1038 (D. Neb. 2002) (same); *Cf. McRaith v. American Re-Insurance Co.,* 2010 WL 624857 (N.D. Ill. 2010) (rejecting liquidator's motion to remand based on argument that the general Removal statute was reverse-preempted by McCarran-Ferguson, where the liquidator filed a separate action, **not a motion within the liquidation proceedings such as the Petitioner did here**). Therefore, because the Convention Act is reverse preempted, no federal question jurisdiction exists and the Removal Action must be remanded to the Liquidation Court.

## B. Jurisdiction Cannot be Based on the Convention Act

Even if not reverse-preempted, the Convention Act does not apply to the Removal Action. A party seeking confirmation of an arbitration award must comply with the "agreement-in-writing" requirement of Article IV of the Convention for the court to have subject matter jurisdiction.

*Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1291 (11th Cir. 2004). Pursuant to Article IV of the Convention:

> The party applying for recognition and enforcement shall, at the time of the application, supply:
> (a) The duly authenticated original Final Award or a duly certified copy thereof;
> (b) The original agreement referred to in article II or a duly certified copy thereof.

*Id.* (quoting Convention Done at New York June 10, 1958, T.I.A.S. No. 6997 (Dec. 29, 1970), Art. IV, §1). Parties have an "agreement in writing" under the Convention if there is "an arbitral clause in a contract or an arbitration agreement, **signed by the parties**." *Sierra v. Cruise Ships Catering & Servs. Int'l, N.V.*, 631 F. App'x 714, 716 (11th Cir. 2015) (citing Convention, Art. II(2)). Here, like, Catalina has not provided, nor can it provide, this Court with an agreement to arbitrate **signed by both parties**. *See generally,* Removal Action. For this reason alone, the Removal Action should be remanded for lack of subject matter jurisdiction. *See, e.g., Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d at 1294.

Alternatively, the Convention Act also does not apply to the Removal Action because Petitioner and Catalina contractually agreed that the arbitration underlying the Petition is governed by the Pennsylvania Uniform Arbitration Act. *See* Removal Action, Ex. B, Ex. A, Arbitration Clause.[4] The Pennsylvania Uniform Arbitration Act provides the procedure by which Liquidator may seek to vacate the award. *See* 42 Pa.C.S. § 7314. In circumstances such as this, where the parties to a contract have agreed to arbitrate in accordance with state law, the FAA does not apply. *Glazer's Distributors of Illinois, Inc. v. NWS-Illinois, LLC*, 376 Ill. App. 3d 411, 421 (1st Dist. 2007) (citing *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior*

---

[4] Where, as here, the contention is that there is in fact no subject matter jurisdiction, the movant may use affidavits and other materials to support the motion." *United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (*en banc*).

*University,* 489 U.S. 468, 470-71 (1989) (holding that application of a state arbitration law was not preempted by the FAA where the contracting parties had agreed that the contract at issue, including the arbitration provision, would be governed by state law). Since the Convention Act is Article 2 of the FAA, the parties have agreed that the Convention Act does not govern vacation proceedings for the Final Award, and the Removal Action should thus be remanded for lack of subject matter jurisdiction.

### C. This Court Should Abstain From Hearing the Removal Action

Even if this Court finds that it possesses subject-matter jurisdiction over the Removal Action, it should abstain from exercising it under the abstention doctrine set forth in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) and remand, or alternatively stay this case in favor of the proceeding before the Liquidation Court. "Because its analysis provides the closest fit, *Burford* has become the doctrine of choice in analyzing whether to abstain in favor of state insurance liquidation and rehabilitation proceedings." *Prop. & Cas. Ins. Ltd. v. Cent. Nat'l Ins. Co. of Omaha*, 936 F.2d 319, 321 (7th Cir. 1991)) (omitting internal citation). The *Burford* abstention doctrine is intended to prevent federal courts from interfering with specialized state regulatory schemes, such as the Illinois Liquidation Statute that is at issue here. *Burford*, 319 U.S. at 327. *Burford* abstention is appropriate when (1) there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* (omitting internal citations). The second type of *Burford* abstention is appropriate here.

There are two essential elements under this type of *Burford* abstention. First, the state must offer some forum in which claims may be litigated. *Prop. & Cas. Ins.*, 936 F.2d at 323. Second, that forum must be special – i.e. it must stand in a special relationship of technical oversight or concentrated review to the evaluation of those claims. *Id.* The Seventh Circuit and this Court have invoked this type of *Burford* abstention in light of a state court's substantial interest in implementing and carrying out a consistent policy for the orderly liquidation of domestic insurance companies, such as Legion Indemnity. *See Hartford Casualty Ins. Co.*, 913 F.3d at 425-27 (noting "large number of cases where federal courts have abstained lest they upset ongoing state insurance insolvency proceedings").

In *Hartford Casualty,* the Court set forth the following four factors to help determine whether a federal court should exercise its jurisdiction within the context of the insurance industry: (1) whether the suit is based on a cause of action that is exclusively federal; (2) whether the suit requires the court to determine issues that are directly relevant to state policy in the regulation of the insurance industry; (3) whether state procedures indicate a desire to create special state forums to regulate and adjudicate the issues; and (4) whether there are difficult or unusual state laws at issue. *Id.* at 425 (omitting internal citation). Here, abstention is warranted under each of these factors.

First, the Removal Action is based on a cause of action that is not exclusively federal. Specifically, by filing the Removal Action, Catalina is asking this Court to decide the Liquidator's Motion to Vacate and thus, determine whether it should be awarded attorneys' fees from the Estate. Pursuant to the Subject Treaties, the underlying arbitration was governed by the Pennsylvania Uniform Arbitration Act ("PUAA"); not the FAA. *See* Removal Action, Ex. B, Ex. A, Arbitration Clause. Any vacation of the award is governed by the PUAA; not the Convention Act, and will

require this Court to determine whether the Panel exceeded its authority under state law in awarding Catalina attorneys' fees. The absence of any federal question weighs in favor of abstention. Catalina's improper assertion of federal question jurisdiction based on the Convention Act does not weigh against abstention.

Second, resolution of the Motion to Vacate will require this Court to determine issues that are directly relevant to the pending liquidation proceeding – i.e. whether the Final Award should be vacated, and if not, where on the Illinois statutory priority scheme payment pursuant to the Final Award should fall. To decide the Motion to Vacate, this Court must determine (1) whether the Panel had a legal basis for awarding Catalina attorneys' fees and costs; and (2) that the Final Award actually ordered payment by Petitioner to Catalina of $76,602.63 in unpaid premium. [5] In other words, this Court will undoubtedly need to determine the existence and amount of liability, if any, owed by Petitioner to Catalina; issues that are directly relevant to the pending liquidation proceeding and enjoined by the Liquidation Order from being decided in this Court. As is discussed in greater detail above, States have a paramount interest in maintaining a uniform insurance liquidation process that provides protection to policyholders, and Congress has expressed a strong desire to avoid federal interference in those proceedings under the McCarran-Ferguson Act. *See U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 502 (1993); *Hartford Cas. Ins. Co.*, 913 F.2d at 426; *Blackhawk Heating & Plumbing Co. v. Geeslin*, 530 F.2d 154, 159–60 (7th Cir. 1976); *see also Mountain Funding, Inc. v. Frontier Ins. Co.*, 329 F. Supp. 2d 994, 999 (N.D. Ill. 2004) (abstention appropriate where insurance liquidation proceeding was adjudicating all

---

[5] Neither the Initial Final Award nor the Final Award orders the Liquidator to pay Catalina $76,602.63 in unpaid premium. Rather, the Panel awarded Catalina $76,602.63 in unpaid premium, which "may be set off against any future amounts billed by the OSD to Catalina . . . or may equally, if appropriate, qualify for distribution in accordance with the Illinois Liquidation Statute generally." *See* Petition, Ex. A. Clearly, even the Panel acknowledged that any payment made under the Final Award is to be made pursuant to the Code and not as directed by this Court.

claims against defendant in detailed and uniform manner); *Gen. Railway Signal Co.*, 921 F.2d at 708 (stating, in dicta, that "abstention from the exercise of federal court jurisdiction ... over claims arising out of such state liquidation proceedings is particularly appropriate"); *Shapo v. Engle*, 1999 WL 446853, at *10 (N.D. Ill. June 11, 1999) (unreported) (abstaining from hearing motion seeking advancement of attorneys' fees and costs from the estate of an insolvent insurer).

The Liquidator is marshalling Estate assets and determining the merits of the claims pursuant to the procedures set forth in the Illinois Liquidation Statute and the Liquidation Order. Thousands of claims have been filed pursuant to statutory procedures and it is the intention of the Illinois legislature that those claims be resolved in a single forum. The Illinois Liquidation Statute permits the Liquidation Court to enjoin parties that threaten the liquidation proceeding, namely, by upsetting the marshaling of funds for later distribution to policyholders and creditors. *See* 215 ILCS 5/189. Accordingly, the second factor also favors abstention.

Third, the McCarron-Ferguson Act, 15 U.S.C. § 1011 *et seq.* vests the States with the primary power to regulate the insurance industry. Pursuant to that authority, Illinois has devised a detailed set of procedures governing the rehabilitation and liquidation of insolvent insurers. *See* Illinois Liquidation Statute. That statutory scheme is a clear indication of the State's intent to be the exclusive forum for cases such as this that involve claims against insolvent insurers. Also, as noted in *Dowling v. United States Dep't of Health & Human Servs.*, 2018 WL 3232792, at *5 (N.D. Ill. July 2, 2018) (slip op.), the Code permits the "Liquidator to consolidate insurance rehabilitation and liquidation proceedings state-wide in one of two circuit courts (Sangamon or Cook County), and avail herself of Judges experienced in insurance matters and to promote efficiency and consistency." *Dowling*, 2018 WL 3232792, at *5 (citing 215 ILCS 5/199). In other words, Illinois has the type of "special forum" that provides technical oversight or concentrated review of

- 14 -

insurance liquidation proceedings that makes abstention appropriate over the Removal Action. *Id.*
Thus, the third factor also weighs in favor of abstention.

Fourth, the Removal Action requires that this Court decide a complex state law; namely,
that any payment owed to Catalina pursuant to the Final Award, if not vacated, is paid pursuant to
the priority scheme set forth under 215 ILCS 5/205. Allowing the Removal Action to go forward
in this Court may allow Catalina to improperly jump ahead of Legion Indemnity's other creditors
by filing a lawsuit outside of the state liquidation proceedings. *Hartford Casualty Ins. Co.*, 913
F.2d at 426. Thus, the fourth factor favors abstention. Accordingly, this Court should abstain
from exercising jurisdiction and remand the Removal Action. *See Quackenbush v. Allstate Ins.
Co.*, 517 U.S. 706, 730-31 (1996) (holding that federal courts have the power to remand cases
based on abstention principles where, as in this case, the relief sought (i.e. vacation of an arbitration
award) is equitable).

Alternatively, to the extent this Court finds that the Removal Action (i.e. the Motion to
Vacate) seeks legal relief, this Court should stay the matter until the state liquidation proceedings
have concluded. *See id.* (abstention principles permit a court to stay the matter until the state
proceedings are concluded). Finally, abstaining will not deprive Catalina of a forum for its efforts
to confirm and enforce the Final Award. Catalina has an opportunity to challenge the Liquidator's
Motion to Vacate and seek enforcement of the Final Award in the Liquidation Court; the forum
that **Catalina agrees is proper** for such enforcement and vacation proceedings.

### D. The Removal Action Should Be Remanded Because of the Anti-Suit Injunctions of the Liquidation Order

The Liquidation Order provides, in pertinent part, that:

Pursuant to its authority under Section 189 of the Code, 215 ILCS 5/189, the
[Liquidation] Court hereby issues the following **mandatory** and prohibitive
injunctions:

- 15 -

(iv) The officers, Liquidators, agents, third party administrators, managing general agents, servants, representatives, policyholders, creditors, and employees of LEGION INDEMNITY, and all other persons and entities having knowledge of this Order, are restrained from bringing or further prosecuting any claim, action or proceeding at law or in equity or otherwise, whether in this State or elsewhere, against LEGION INDEMNITY or its property or assets, or the Liquidator or Liquidator, except insofar as those claims, actions or proceedings arise in or are brought in the liquidation proceedings prayed for herein; or from obtaining, asserting or enforcing preferences, judgments, attachments or other like liens, including common law liens . . . against LEGION INDEMNITY, or its property or assets while in the possession and control of the Liquidator, or from interfering in any way with the Liquidator in his possession or control of the property, business, books, records, accounts, premises and all other assets of LEGION INDEMNITY, until the further order of this Court; and . . .

(vii) All policyholders under policies of insurance issued by LEGION INDEMNITY, employees, and any other persons asserting claims against such policyholders, and creditors of LEGION INDEMNITY, and all other persons, companies and entities having knowledge of this Order, are restrained from instituting or pursuing any action or proceeding in any court or before any administrative agency . . . which seek in any way, directly or indirectly, to contest or interfere with the Liquidator's exclusive right, title and interest to funds recoverable under treaties and agreements of reinsurance or excess insurance heretofore entered into by or on behalf of LEGION INDEMNITY.

Exhibit A, ¶¶ (iv) and (vii) (emphasis added). Under the Full Faith and Credit Statute, these anti-suit provisions of the Liquidation Order are entitled to full faith and credit in this Court, and the Removal Action should thus be remanded in deference to the proceedings before the Liquidation Court.

The Full Faith and Credit Statute provides, in pertinent part, that the "judicial proceedings of any court of any ... State...shall have the same full faith and credit in every court within the United States...as they have by law or usage in the courts of such State... from which they are taken." 28 U.S.C. § 1738. Because the anti-suit injunction of the Liquidation Order would be afforded full effect in the state courts of Illinois, this provision of the Liquidation Order is entitled to full faith and credit, and complete enforcement, in this Court. *Kitces v. Wood,* 917 F. Supp. 338

(D.N.J. 1996); *see Brooks v. Giuliani,* 84 F.3d 1454 (2d Cir. 1996) (federal district court must accord state judgment preclusive effect that would be given it by state court). *Williams v. Murdoch,* 330 F.2d 745 (3d Cir. 1977) (Full Faith and Credit Statute makes the concept of the Full Faith and Credit Clause of the federal constitution applicable in federal court).

The Supreme Court of the United States has concluded that the Full Faith and Credit Clause applies to orders placing insurance companies in receivership. *See Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guaranty Ass'n,* 455 U.S. 691, 707 (1982). Federal courts have similarly held that state court orders prohibiting suits that may interfere with the liquidation process are entitled to full faith and credit. *See, e.g., Independent Petrochemical Corp. v. Aetna Cas. and Sur. Co.,* 672 F. Supp. 1, 6 (D.D.C. 1986); *American Cast Iron Pipe Co. v. Statesman Ins. Co.,* 343 F. Supp. 860, 865 (D. Minn. 1972) (according full faith and credit to an order in Illinois liquidation proceedings); *Janak v. Allstate Ins. Co.,* 319 F. Supp. 215, 217 (W.D. Wis. 1970) (holding that injunctions entered by an Illinois court restraining all persons from interfering with the liquidator are entitled to full faith and credit in Wisconsin federal court).

Since the Legion Indemnity liquidation proceeding is a state judicial proceeding within the meaning of 28 U.S.C. § 1738, the Liquidation Order is entitled to full faith and credit in this Court. Accordingly, in light of the anti-suit injunctions in the Liquidation Order, the Removal Action should be remanded in favor of the liquidation proceeding in the Liquidation Court.

### E. This Court Should Award Petitioner Her Attorneys' Fees, Costs and Expenses Incurred as a Result of the Improper Removal Action

This Court should award Petitioner her attorneys' fees, costs and expenses to reimburse her for the expense of opposing Respondent's improper Removal Action.  Where removal is improper, as is the case here, Petitioner is presumptively entitled to an award of attorneys' fees and costs incurred as a result of the Removal Action. *Husko v. Geary Elec., Inc.*, 316 F. Supp. 2d

- 17 -

664, 670 (N.D. Ill. 2004) (awarding non-removing party attorneys' fees because removing party lacked an objectively reasonable basis for seeking Removal) (citing *Hart v. Wal-Mart Stores, Inc.*, 360 F.3d 674, 678 (7th Cir. 2004); *Garbie v. DaimlerChrysler Corp.,* 211 F.3d 407, 410 (7th Cir.2000) ("§ 1447 is *not* a sanctions rule; it is a fee-shifting statute, entitling the district court to make whole the victorious party").

The Removal Action is objectively unreasonable. Notwithstanding the multiple, independent grounds for remand, Catalina forced the Liquidator to file this Motion. Catalina's Removal Action is not well-grounded in law and cannot meet the objectively reasonable standard for removal given the multiple grounds and cases in favor of remand. Indeed, Catalina has even acknowledged that its Removal Action is improper as it agrees that any enforcement of the Final Award must take place in the Liquidation Court. Dkt. No. 25, p. 8. This is precisely the type of situation that Congress sought to address when it provided for recovery of "costs and expenses, including attorney fees, incurred as a result of the removal" pursuant to 28 U.S.C. §1447(c). Accordingly, Petitioner should be awarded the costs and expenses that she has incurred as a result of seeking to remand Catalina's Removal Action.

## CONCLUSION

WHEREFORE, for each of the foregoing reasons, Petitioner requests that this Court enter an Order (1) remanding the case to the Circuit Court of Cook County, Illinois, (2) granting Petitioner her just costs and actual expenses, including attorneys' fees incurred as a result of the removal of this action, and (3) granting Petitioner such other and further relief as this Court deems just and proper.

- 18 -

Respectfully submitted,

Jennifer Hammer, Liquidator of Insurance of the State of Illinois, in her capacity as Liquidator of LEGION INDEMNITY COMPANY, Petitioner

By:    */s/ Ryan J. Gehbauer*
        One of Her Attorneys

James L. Oakley (joakley@thompsoncoburn.com)
Ryan J. Gehbauer (rgehbauer@thompsoncoburn.com)
THOMPSON COBURN LLP
55 East Monroe Street, 37th Floor
Chicago, Illinois 60603
312-346-7500