UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CATALINA HOLDINGS (BERMUDA) LIMITED, <br><br> Petitioner, <br><br> v. <br><br> JENNIFER HAMMER, DIRECTOR OF INSURANCE OF THE STATE OF ILLINOIS, AS LIQUIDATOR OF LEGION INDEMNITY COMPANY, <br><br> Respondent. | No. 18 CV 5642 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Alea Group Limited provided reinsurance to Legion Indemnity Company. Shortly after the terms of their agreements ended, Legion entered liquidation proceedings and the respondent (the Director of Insurance of the State of Illinois) was appointed as liquidator. Petitioner Catalina Holdings (Bermuda) Limited bought Alea. Many years later, the Director sent Catalina an offer to settle an outstanding balance that she said had resulted from claims ceded under the original agreements between Alea and Legion. When Catalina refused to pay, the Director initiated arbitration, citing arbitration clauses in the old reinsurance agreements. Catalina filed counterclaims before the arbitrators for unpaid premiums and attorney's fees, and the panel ruled in Catalina's favor. Catalina then filed a petition to confirm the panel's award. The Director moves to dismiss.

I.  **Legal Standards**

A complaint must contain a short and plain statement of factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); Fed. R. Civ. P. 8(a)(2). In ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), I must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the non-moving party. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). I am not limited to the jurisdictional allegations of the complaint and may "view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993). "At each stage of the jurisdictional analysis, the plaintiff bears the burden of proof." *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009).

II. **Facts**

Alea Group Limited provided reinsurance to Legion Indemnity Company during the early 2000s. [25-2] at 3–4.[1] Some of their reinsurance agreements required that certain disputes be arbitrated "in accordance with the rules and procedures established by the Uniform Arbitration Act as enacted in Pennsylvania." [22-3] at 28; 54–55; 73–74. Legion ceded claims to Alea pursuant to the agreements during the early 2000s, but Legion eventually stopped communicating with Alea. [25-2] at 4. Catalina (a Bermuda company with its principal place of business in the United

---

[1] Bracketed numbers refer to entries on the district court docket.

Kingdom) bought Alea and assumed responsibility for the relevant reinsurance agreements in 2013. *Id.* at 2 n2.

As it turns out, Legion had run into financial trouble. It was placed into conservatorship in 2002 and entered liquidation proceedings in 2003. [25-1] at 3; [25-2] at 4; [19-2] § D. The Illinois Director of Insurance was appointed as liquidator shortly thereafter. *Id.* According to the Director, both before and during the liquidation proceedings, claims continued to cede to Catalina. [19] at 4. In 2014, the Director sent Catalina a commutation offer reflecting a balance owed of roughly $1 million. [25-2] at 4. According to Catalina, this was the first time they had received any communications regarding Alea's reinsurance contracts with Legion since 2003. *Id.* When Catalina declined to pay, the Director demanded arbitration. [25-1] at 4. Catalina counterclaimed in the arbitration proceedings for unpaid premiums and attorneys' fees and costs. [25-2] at 10.

The parties agreed to hold arbitration hearings in Chicago, *id.* n.11, and those hearings took place before a panel of arbitrators during the summer of 2018. [25] at 3, [25-3]. The panel ultimately awarded Catalina $76,602.63 in unpaid premiums and $437,501.04 in attorneys' fees and costs. [25] at 3–4.[2] That amount was to be offset against future amounts that the Director might bill Catalina, or that might qualify

---

[2] Catalina filed a motion to seal the final arbitration award, [5], and I granted that motion. [11]. But Catalina later disclosed the amounts awarded. [25] at 3–4. The Director also partially disclosed those figures (and other aspects of the final award) in her briefing on the motion to dismiss or stay. *See, e.g.,* [19] at 10 n.3. There is an exception to the parties' confidentiality agreement whenever the parties agree to disclosure via written agreement, [5-1] at 2, § 2, and whenever disclosure is made "in connection with court proceedings relating to any aspect of the arbitration, including but not limited to motions to confirm, modify or vacate an arbitration award." *Id.* at 2, § 3.

for distribution in accordance with Illinois's liquidation statutes. [19] at 10–11 n.3. Catalina filed this petition to confirm the award, citing the Federal Arbitration Act, 9 U.S.C. § 9, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.* [1]. The Director filed a motion to dismiss or stay the petition, citing Federal Rule of Civil Procedure 12(b)(1), reverse preemption under the McCarran-Ferguson Act, and abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). [19].

### III.   Analysis

####   A.   Subject Matter Jurisdiction & Choice of Law

The Convention governs my review of the petition, not the Pennsylvania Uniform Arbitration Act. The arbitration clause dictated the rules and procedures that governed the arbitration proceeding—not my review of the arbitrator's award. *See, e.g.,* [22-3] at 28 ("the arbitration will be in accordance with the rules and procedures established by the Uniform Arbitration Act as enacted in Pennsylvania"); *Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123, 1125, 1129 (7th Cir. 1997) (applying 9 U.S.C. §§ 201 *et seq.* when reviewing arbitral award issued pursuant to an arbitration clause that called for the agreement to be interpreted "in accordance with English law").

I have jurisdiction over the petition. The arbitration agreement arises out of a dispute over reinsurance contracts, *see* 9 U.S.C. § 202 (arbitral "awards arising out of a legal relationship … which is considered as commercial" fall under the Convention, and agreements described in 9 U.S.C. § 2 are "considered as commercial"); *Oblix, Inc.*

4

*v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004) (reinsurance treaties generally fall under 9 U.S.C. § 2), and the contracts arise out of a relationship between a citizen of the United States and a citizen of the United Kingdom. 9 U.S.C. § 202 (all arbitral awards fall under the Convention unless they arise out of "a relationship which is entirely between citizens of the United States"); *Lear Corp. v. Johnson Elec. Holdings Ltd.,* 353 F.3d 580, 582 (7th Cir. 2003) (a Bermuda corporation is a citizen of the United Kingdom for purposes of 28 U.S.C. § 1332(a)(3)). The Convention grants district courts original jurisdiction in such cases. 9 U.S.C. § 203 ("[t]he district courts of the United States … shall have original jurisdiction over" any "action or proceeding falling under the Convention"). *See also Jain v. de Mere,* 51 F.3d 686, 688 (7th Cir. 1995) ("the Act creates a strong presumption in favor of arbitration, especially in international commercial agreements").[3]

---

[3] Catalina requests confirmation of the award under the Federal Arbitration Act, which requires that parties seeking review of an arbitral award "establish some independent basis for federal subject matter jurisdiction." *Yasuda Fire & Marine Ins. Co. of Europe, Ltd v. Cont'l Cas. Co.*, 37 F.3d 345, 347 n.1 (7th Cir. 1994). The Convention provides an independent basis for jurisdiction, and could mark "the beginning and end" of my authority over this case. *Jain*, 51 F.3d at 689. But there's more—the parties are diverse. 28 U.S.C. § 1332(a)(2). Catalina is a citizen of the United Kingdom, *Lear,* 353 F.3d at 582, and the Director is a citizen of Illinois, either as representative of Legion, *Hong Kong Deposit & Guar. Co. v. Hibdon*, 602 F.Supp. 1378, 1380–81 (S.D.N.Y. 1985) (liquidator's citizenship, not that of the company it is liquidating, determines diversity); *Clarkson Co. v. Shaheen*, 544 F.2d 624, 628 (2d Cir. 1976) (there is a "general common law rule that courts will look to the citizenship of a trustee, receiver, administrator, or other representative, and not the party which he represents, in determining diversity jurisdiction") (citing *Mecom v. Fitzsimmons Drilling Co.,* 284 U.S. 183, 186 (1931); *New Orleans v. Gaines's Administrator,* 138 U.S. 595, 606 (1891); *Nunn v. Feltinton*, 294 F.2d 450, 453 (5th Cir. 1961), *cert. denied*, 369 U.S. 817 (1962)), or because Legion is itself an Illinois company. [25] at 4. The amount in controversy is in excess of $75,000. [25] at 3–4. I have jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2). *Lander Co. v. MMP Investments, Inc.*, 107 F.3d 476, 481 (7th Cir. 1997) (the Arbitration Act does not preclude concurrent jurisdiction under both the Convention and other sources of federal jurisdictional).

### B. McCarran-Ferguson Preemption

The Director contends that the Convention is reverse-preempted by the McCarran-Ferguson Act. *See* 15 U.S.C. § 1012 ("[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, … , unless such Act specifically relates to the business of insurance"). This would mean that a federal court could not entertain the petition to confirm the arbitration award. The analysis "requires three inquiries: first, does the federal statute at issue 'specifically relate to the business of insurance;' second, was the state statute 'enacted … for the purpose of regulating the business of insurance'; and third, would application of the federal statute 'invalidate, impair or supersede' the state law." *Autry v. Nw. Premium Servs., Inc.,* 144 F.3d 1037, 1040–41 (7th Cir. 1998). Neither the Arbitration Act nor the Convention specifically relate to the business of insurance, *see* 9 U.S.C. §§ 201 *et seq.*; 9 U.S.C. § 1 *et seq.*, and Article XIII of the Illinois Insurance code does. *See* 215 ILCS 5/187 *et seq*. Neither party disputes this.

This case does not require me to construe any federal law in a way that "invalidate[s], impair[s] or supersede[s]" state law. "The term 'invalidate' ordinarily means 'to render ineffective, generally without providing a replacement rule or law,'" and the term "'supersede' ordinarily means 'to displace (and thus render ineffective) while providing a substitute rule.'" *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999). "[T]o 'impair' a law is to hinder its operation or 'frustrate [a] goal' of that law." *Id.* at 311. *See also id.* at 309 ("[w]hen federal law does not directly conflict with state

6

regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application").

Confirming the arbitration award would not "invalidate, impair or supersede" Illinois's liquidation statutes. Article XIII both grants the Director title to all of Legion's contracts (that were in existence as of the date of the liquidation order), 215 Ill. Comp. Stat. Ann. 5/191, and authorizes her to institute any "action, claim, suit, or proceeding upon any cause of action" so long as it is not time-barred. 215 Ill. Comp. Stat. Ann. 5/194(b). The Director assumed control of Legion's contracts, requested payment on balances she believed to be outstanding and, when Catalina refused, demanded arbitration proceedings pursuant to the reinsurance agreements. [25-1] at 4. The Director appears to have thought there was nothing inconsistent with arbitrating a claim that would eventually be dealt with in liquidation court right up until the panel ruled in Catalina's favor.

According to the Director, the petition risks interference with two sections of Article XIII that say that Sangamon and Cook County are the "exclusive forums for the liquidation of the insurer." [19] at 8 (citing 215 Ill. Comp. Stat. Ann. 5/188; 215 Ill. Comp. Stat. Ann. 5/188.1); [26] at 12. But neither section says that. At most, section 5/188 obligates the Director to report certain companies to the Attorney General, who then has a duty to apply by complaint (in Cook or Sangamon County or "the circuit court of the county in which such company has, or last had its principal office," 215 Ill. Comp. Stat. Ann. 5/188) for an order to liquidate or seek "other relief

as the nature of the case … may require." *Id.*[4] Nothing that the Director has cited says the liquidator cannot resolve a related contractual dispute somewhere else, either before, during, or after the liquidation proceedings. *See* 215 Ill. Comp. Stat. Ann. 5/209(7.5)(a) (the "[d]irector shall have the authority to exercise all available remedies on behalf of the insolvent company to marshal" certain "reinsurance recoverables," including certain "[c]ontingent or unliquidated general creditor's and ceding insurers' claims"). A blanket citation to Illinois's insurance liquidation statutes is not enough to show that the panel's award "frustrate[d]" the Director's "ability to marshal the remaining funds and pay policyholders and creditors," or "interfere[d]" with Illinois's insurance regime. [19] at 8.

Nor will confirming the panel's award "decide the existence of liability and amount" that the Director owes Catalina. [26] at 7. Liability and amount has already been decided. [25] at 3–4. The petition asks me to perform a very limited review to

---

[4] Section 5/188.1 adds that, in certain circumstances, upon the filing of the complaint, the court must enter an order enjoining "the company … from disposition of its property and from further transaction of its business except with the concurrence of the Director until the further order of the court." 215 Ill. Comp. Stat. Ann. 5/188.1. Section 5/187(2) defines "company" to include all "non-risk bearing entities or persons engaged in any aspect of the business of insurance on behalf of an insurer against which a receivership proceeding has been or is being filed under this Article, including but not limited to, entities that provide … underwriting, claims handling, or any other similar services to that insurer, …, if the entity or person is an affiliate of that insurer." 215 Ill. Comp. Stat. Ann. 5/187(2). Section 5/187(4) defines "affiliate" to mean "a person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, the person specified." There has been no showing that Catalina was acting "on behalf of" Legion or that Catalina directly or indirectly controlled Legion; it just provided them with reinsurance. *See* [25-2] at 3–4. Even if § 5/188.1 applies, the Director does not dispute that it failed to raise these points in the arbitration proceedings (Catalina points out that the Director "affirmatively authorized the panel to proceed" after those counterclaims were filed, [25] at 10 (citing [25-3] at 6:20–7:4)), so the counterclaims were at least with the Director's "concurrence," if not outright approval.

8

confirm that the decision was not reached in violation of the Arbitration Act or the Convention. I am precluded from doing anything more than that. 9 U.S.C. § 9; *Baravati v. Josephthal, Lyon & Ross, Inc.,* 28 F.3d 704, 706 (7th Cir. 1994) ("[j]udicial review of arbitration awards is tightly limited; perhaps it ought not be called 'review' at all"); *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987) ("[a]bsent a statutory basis for modification or vacatur, the district court's task was to confirm the arbitrator's final award as mandated by section 9 of the Act").

Even if Catalina's counter-claim for unpaid premiums in the arbitration proceedings constituted a separate "claim" on Legion's estate, it is not clear that would pose a problem for the liquidation court. The statute and case law explain how reinsurance claims should be prioritized. 215 Ill. Comp. Stat. Ann. 5/205; *In re Liquidations of Reserve Ins. Co.*, 122 Ill. 2d 555, 563–64 (1988). The Director has not pointed to evidence showing that Catalina's claim was time-barred, 215 Ill. Comp. Stat. Ann. 5/208, nor explained how Catalina would be able to "jump ahead" other creditors as a result of an order confirming the panel's award. (At least according to Catalina, there is no one left to jump ahead of. *See* [25] at 13 ("[t]he estate has already paid all timely and late filed policyholder and creditor claims in full")). The award perfected a claim that Catalina may now use to obtain payment in the liquidation court. It is not in contravention to the liquidation proceedings, it exists alongside, and is consistent with, those proceedings.

*Stephens v. Am. Int'l Ins. Co.*, 66 F.3d 41 (2d Cir. 1995), does not apply. In *Stephens,* there was a "state statute which specifically regulate[d] the liquidation of

9

insurance companies and which render[ed] arbitration clauses unenforceable during liquidation." *Id.* at 44. There is no such statute here, and without something for the Convention or Arbitration Act to "invalidate, impair or supersede," there is no need to repeat the rest of the preemption analysis from *Stephens*. *See also Foresight Energy, LLC v. Certain London Mkt. Ins. Companies,* 311 F.Supp.3d 1085, 1101 (E.D. Mo. 2018) (the Missouri anti-arbitration statute "expressly proscribe[d] the enforcement of arbitration provisions contained in insurance contracts").

Even if there were a need, I find the Fourth Circuit's and Fifth Circuit's treatment of the issue more persuasive. *See ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 388–89 (4th Cir. 2012) (McCarron-Ferguson is limited to "legislation within the domestic realm," and "Congress did not intend for the McCarran-Ferguson Act to permit state law to vitiate international agreements") (citing *F.T.C. v. Travelers Health Ass'n*, 362 U.S. 293, 300 (1960) (there is "no indication" that Congress thought McCarran-Ferguson would empower a state to "regulate activities carried on beyond its own borders"); *Safety Nat. Cas. Corp. v. Certain Underwriters At Lloyd's, London*, 587 F.3d 714, 722–23 (5th Cir. 2009) (distinguishing between the Convention Act (characterized as implementing legislation for a non-self-executing treaty) and the Convention itself (a treaty and the ultimate source of the district court's jurisdiction) to determine that the Convention was an act of the Executive Branch and the Senate—not an "Act of Congress").[5]

---

[5] I also find persuasive decisions finding that the McCarran-Ferguson Act does not preempt the federal diversity jurisdiction statute. *Hammer v. United States Dep't of Health & Human Servs.*, 905 F.3d 517, 534 (7th Cir. 2018), *reh'g denied* (Nov. 21, 2018); *Gross v. Weingarten*, 217 F.3d 208, 222 (4th Cir. 2000) ("we do not believe that concurrent federal jurisdiction over

10

The Seventh Circuit has not yet spoken on the issue. *See also Pine Top Receivables of Illinois, LLC v. Banco de Seguros del Estado*, 771 F.3d 980, 986–87 (7th Cir. 2014) (declining to reach the merits of an argument that McCarran-Ferguson preempts the Foreign Sovereign Immunities Act). But it recently held that the "choice of forum between state and federal court, within a state" is not "integral" to the policy relationship or the substantive concerns of the McCarran-Ferguson Act. *Hammer*, 905 F.3d at 534. Even though a presumptive rule that applied in *Hammer* (in favor of removal under 28 U.S.C. § 1442 for federal entities) does not apply here, *id*. at 533, a different one does: there remains a "liberal federal policy favoring arbitration agreements." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 81 (2000). Neither the Arbitration Act nor the Convention preempt Illinois's liquidation proceedings wholesale and, in the absence of any set of facts that requires interpreting either such that it would "invalidate, impair or supersede" Illinois's insurance laws, neither is reverse-preempted under McCarran-Ferguson.

---

the defendants' counterclaims threatens to 'invalidate, impair, or supersede' (as those terms are used in the McCarran–Ferguson Act) Virginia's efforts to establish a single equitable proceeding to liquidate or rehabilitate insolvent insurers"); *Martin Ins. Agency, Inc. v. Prudential Reinsurance Co.*, 910 F.2d 249, 254 (5th Cir. 1990) (abstaining under *Buford* but first holding that dismissal should not be based on lack of subject matter jurisdiction); *Hawthorne Sav. F.S.B. v. Reliance Ins. Co. of Illinois*, 421 F.3d 835, 843 (9th Cir. 2005), *amended*, 433 F.3d 1089 (9th Cir. 2006) ("[t]he necessary question in cases such as this one is whether operation of the diversity jurisdiction statute actually 'invalidate[s], impair[s], or supersede[s]' the state's liquidation efforts"); *Grimes v. Crown Life Ins. Co.*, 857 F.2d 699, 702 (10th Cir. 1988) ("the policy of the McCarran–Ferguson Act was to leave the regulation of insurers to the states, it did not intend to divest federal courts of the right to apply state law regarding the regulation of insurers in appropriate diversity proceedings").

## C. *Buford* Abstention

The Supreme Court's decision in *Burford* "has become the doctrine of choice in analyzing whether to abstain in favor of state insurance liquidation and rehabilitation proceeding" because "its analysis provides the closest fit." *Prop. & Cas. Ins. Ltd. v. Cent. Nat. Ins. Co. of Omaha*, 936 F.2d 319, 321 (7th Cir. 1991). Abstention remains the exception, not the rule. *Id.* There are two types of *Buford* abstention, but the Director only advances one: federal courts should "abstain 'from the exercise of federal review that would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* at 322.

There are two "essential elements" to this type of *Buford* abstention: the state must offer a forum where these claims may be litigated, and that forum must "stand in a special relationship of technical oversight or concentrated review to the evaluation of those claims." *Id.* at 323. The "ability to point to a specialized proceeding is a prerequisite … not a factor." *Id.* Four factors act as useful guidance:

> First, is the suit based on a cause of action that is exclusively federal? Second, does the suit require the court to determine issues that are directly relevant to state policy in the regulation of the insurance industry? Third, do state procedures indicate a desire to create special state forums to regulate and adjudicate these issues? Fourth, are difficult or unusual state laws at issue?

*Hartford Cas. Ins. Co. v. Borg-Warner Corp.*, 913 F.2d 419, 425 (7th Cir. 1990) (noting that, although commentators have attempted to label and categorize the concept, "[a]bstention is a much more amorphous concept" than the commentators suggest).

Abstention would be inappropriate under *Buford* and *Hartford*. The cause of action is exclusively federal. [1] at 2 (citing 9 U.S.C. §§ 9, 203, 207). There are not any

12

"difficult or unusual state laws" at issue; the petition asks me to confirm the panel's award, not reconsider its merits. I am precluded from engaging in the type of second-guessing that the Director believes would invade the province of the Illinois liquidation court. *See Tice v. Am. Airlines, Inc.*, 373 F.3d 851, 854 (7th Cir. 2004) ("[a]s long as what the arbitrators did can fairly be described as interpretation, our hands are tied"); *Yasuda,* 37 F.3d at 349 ("a court may vacate an arbitration award only if the arbitration panel's decision to grant the award does not draw its essence from the agreement between the parties"). Nor does the petition require me to determine any issue that is "directly relevant" to Illinois's policies regarding the regulation of the insurance industry, at least insofar as those policies have been codified. It does not require me determine the priority of Catalina's claim on Legion's estate or engage in any other way with Illinois's insurance or liquidation laws. *See* [19] at 10. All it calls on me to do is either confirm or vacate the panel's award. With a decision in hand, the Director and Catalina will be free to proceed before the liquidation court as they and that court—and the State of Illinois—see fit. *See* [6] at 5; *McRaith v. Am. Re-Ins. Co.*, No. 09 C 4027, 2010 WL 624857, at *3 (N.D. Ill. Feb. 17, 2010) ("[t]he proceeds of any judgment … obtained in federal court will be distributed to policyholders and other creditors in the rehabilitation proceeding according to their relative priority as determined by state law").

  The third factor is the only one that arguably weighs in favor of abstention. But it does not weigh heavily. Even though Illinois has created a special forum for adjudicating the liquidation of insurance companies, the Director's characterization

13

of the liquidation court as an exclusive "special forum" for all matters related in any way to any insolvent insurance company overstates the breadth of Illinois's insolvency regime. And to the degree Catalina's petition requests an order going beyond the confirmation of the underlying award, that request is without merit and will not be granted (at least absent a motion to modify the award, in which case the *Buford* abstention analysis might need to be revisited). *See* 9 U.S.C. § 9; *Baravati,* 28 F.3d at 706; *Ottley* , 819 F.2d at 376.

*Hartford* is also factually distinguishable. Hartford's complaint required that the federal court "estimate the dividend that reinsurance creditors of [the defendant] will receive from the rehabilitation process" and also "interpret the reinsurance treaties." 913 F.2d at 426. Catalina's requires nothing of the sort. Instead, when the "suit[s] would not be disruptive of the rehabilitation process, a federal court [has] to hear the case." *Id*. Abstention here is not proper under *Hartford*, either.[6]

In the alternative, the Director moves for a stay of this action pending completion of the liquidation proceedings. *See* [19] at 2, 13; *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996) (abstention-based stay may be appropriate when a "setoff issue was being decided by the state courts at the time the District Court ruled," and when the District Court might have been "justified in entering a stay to await the outcome of the state court litigation"). But there is no setoff to be

---

[6] That being said, the Director has not waived either her abstention or anti-suit injunction arguments. *See* [25] at 9 (citing *Clark v. Underwriters Mgmt. Corp.*, No. 98 C 4084, 2003 WL 21148420, at *3 (N.D. Ill. May 16, 2003)). Unlike in *Clark*, the Director has not taken steps or otherwise made an argument (in this forum, at least) that is "inconsistent with [her] present position that the … liquidation proceeding is the 'exclusive forum designated to adjudicate claims against the … estate.'" *Id*. at *6.

14

determined here, nor has there been a showing of any other reason to wait for developments in the liquidation proceedings. There are hints in the briefs but, otherwise, the record is not complete enough to allow me to determine what benefit, if any, would be conferred upon the liquidation court if I were to wait before ruling on the petition for confirmation. The motion to stay is denied.

### D.     The Anti-Suit Injunction & Other Arguments

The liquidation order prohibits "[t]he officers, directors, agents, third party administrators, managing general agents, servants, representatives, policyholders, creditors and employees" of Legion (and anyone else "having knowledge" of the order) from "bringing or further prosecuting any claim, action, or proceeding at law … against [Legion] or … the Director or Liquidator, except insofar as those claims, actions or proceedings arise in or are brought in the liquidation proceedings." [19-2] at 7–8. It does not preclude this court from deciding a petition to confirm an arbitration award. If a party subject to the anti-suit injunction violated it, the court that issued the injunction can order a remedy. Hearing the petition in this court would not deny full faith and credit to the anti-suit injunction.

The Director cites only one other binding decision (*Underwriters Nat. Assur. Co. v. N. Carolina Life & Acc. & Health Ins. Guar. Ass'n*) but there, the question was whether a North Carolina court was required to afford full faith and credit to an Indiana court's judgment. 455 U.S. 691, 705–07 (1982). In contrast, "the rights conferred by Congress to bring in personam actions in federal courts are not subject to abridgment by state-court injunctions, regardless of whether the federal litigation is pending or prospective." *Gen. Atomic Co. v. Felter,* 434 U.S. 12, 17 (1977). As a

result, it is also unimportant whether the petition constitutes a "new proceeding" under *Lander,* 107 F.3d at 478.

The Director's final argument asserts that Catalina has failed to provide an agreement signed by both parties. [26] at 14–15. That argument was advanced for the first time on the final pages of the Director's reply. It was waived. *See Gold v. Wolpert,* 876 F.2d 1327, 1331 n.6 (7th Cir. 1989); *Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992) (arguments not raised until the reply brief are waived).

**IV. Conclusion**

For the foregoing reasons, the Director's motion to dismiss, [19], is denied. A status hearing is set for April 3, 2019, at 9:30 a.m. The parties should be prepared to address the Director's motion to remand, [28] and the Director's motion to vacate. *See* Exhibit B to the Notice of Removal*, Legion Indemnity Company, In Liquidation v. Catalina Holdings (Bermuda) Limited,* No. 18-cv-06595 (N.D. Ill. Sept. 27, 2018) ECF No. 1-2.

ENTER:

                                                   Manish S. Shah
                                                   United States District Judge

Date: March 22, 2019